GEORGE L. KINGSLAND and Others, Plaintiffs, *v.* JOHN CHETWOOD and Others, Defendants.

*Distribution of a surplus fund arising on a foreclosure — what claims may be considered by the referee — notice must be given to all persons interested in the fund — an agent acting under a power of attorney cannot mortgage property of his principal to secure his own debt — the party receiving the mortgage is chargeable with notice of his want of power — lien of one tenant in common upon the share of another in rents wrongfully received by the latter.*

Appeal from an order directing the distribution of the surplus arising upon the foreclosure of a mortgage given in 1868, upon property then owned by five children of John Chetwood, as tenants in common. One Forster claimed a portion of the surplus under a deed executed by Bradbury and John Chetwood and their wives, and by John Chetwood, as the attorney of Hobart Chetwood, which conveyed three undivided fifths to Forster. The deed was in fact a mortgage to secure an indebtedness owing by John to one Hare, as the executor of one Verplank. The power of attorney executed by Hobart appointed John " my true and lawful attorney for me, and in my name, place and stead to sell, convey and mortgage."

*Held,* that the instrument did not empower John to apply the property of Hobart to his own use, or dispose of it to pay or secure his own debts.

That as the deed was executed in the name of Hobart by John, his attorney, Forster was chargeable with knowledge of the contents of the instrument itself, which did not authorize the conveyance of Hobart's interest to secure John's indebtedness.

After the execution of the said deed, Forster assumed the control and possession of the entire property, and he and the executor for whose benefit he held the security collected the rents thereof to a large amount, and thereafter received for three months four-fifths, and thereafter for three months three-fifths of the said rent.

*Held,* that they were liable to account for so much of the rents so collected by them as exceeded that portion thereof to which they were entitled under the conveyance of the two-fifths interest of Bradbury and John.

That as the amount of rents collected and wrongfully appropriated by Forster exceeded in amount the two shares claimed by him in the surplus fund, the said two shares should be distributed among the other tenants in common.

That the referee did not exceed the limits of his authority in directing this equitable adjustment of the claims to be made.

In hearing and disposing of claims made in such proceedings, the referee is entitled to exercise an authority as extensive as the claims themselves, and the legal and equitable objections that may be made to their allowance.

It was proposed before the referee to go into the accounts of John Chetwood against William D. Chetwood and the other tenants in common, and evidence was given tending to show that they were indebted to John.

*Held,* that as no proof was offered to show that John had acquired any right to collect the rents due on the shares of his co-tenants, or any lien thereon, and as the deed to Forster did not purport to convey or transfer any interest in these demands to the grantee, the evidence was properly excluded.

That the report of the referee would not be set aside, for the reason that all the claims heard and passed upon had not been filed with the county clerk.

It appeared that all the tenants in common had, after the execution of the mortgage, conveyed their interest in the property to one Meyer, in the form of a deed, but in fact to secure the performance of certain acts and the payment of certain sums, which had not, at the time of the hearing, been fully performed or paid. Meyer was not a party to the action of foreclosure, nor had any notice been given to him of the proceedings for the distribution of the surplus.

*Held,* that as Meyer's deed had never been recorded, his rights in the property were extinguished by the sale under the judgment in foreclosure, and transferred to the surplus arising thereon, and that he was entitled to notice of the proceedings taken for its distribution.

That the case should be remitted to the referee for further proceedings upon timely notice to Meyer to secure him an opportunity to be heard concerning the disposition of the fund.

APPEAL by George H. Forster, J. Montgomery Hare, as executor, etc., Mary H. Hare, Elizabeth C. Hare, Jr., Anna Hare Miller, James M. Hare, Hobart Hare, Charles H. Hare, William Hobart Hare, Robert Emmett Hare, Chandler Hare and Mary C. Hobart, from an order directing the distribution of surplus moneys.

*Arthur D. Weeks* and *Edward Patterson,* for the appellants.

*C. M. Marsh, Edward Bartlett* and *John Henry Hull,* for the respondents.

DANIELS, J. :

The surplus, which the order directed to be distributed, amounts to the sum of $9,268.04, and it arose out of the foreclosure of a mortgage executed in 1868 to secure the sum of $50,000. The property was owned at the time the mortgage was given, by five different persons as tenants in common, who were the children of John Chetwood in whom the title was vested at the time of his decease. The appellant Forster, claimed a portion of this surplus. His claim was more especially made under an instrument in the form of an absolute deed executed by Bradbury C. Chetwood and John Chetwood and their respective wives, and by John Chetwood as the attorney of Hobart Chetwood, in form conveying three

undivided fifths of the property to Forster. But while this deed was absolute in form, it appeared by a defeasance executed by Forster on the 16th of October, 1879, which was the day of the date of the deed, that the deed was in fact delivered to him by way of security and as a mortgage to secure the payment of an indebtedness owing by John Chetwood to James Montgomery Hare as the executor of the last will and testament of Mary H. Verplanck. These instruments together made a mortgage and nothing more than that of this absolute deed.

As to the one-fifth interest in the land of Hobart Chetwood, one of the grantors named in the deed, it was executed by John Chetwood under a power of attorney, and as the deed from the defeasance, appeared to have been given for the sole purpose of securing the indebtedness of John Chetwood to whom the power had been given, it was held by the report and order to be inoperative as a conveyance or incumbrance of this interest. And that conclusion appears to be supported by the object and design of the power of attorney. For it in no manner operated as a conveyence of the interest of Hobart Chetwood to John Chetwood, neither did it empower him to convey that interest for his own use or benefit. But by the power of attorney he was expressly appointed and authorized to act for Hobart Chetwood, who executed it, and not for himself. This was expressed in that part of the power making the appointment, and it designated John Chetwood who was the person appointed as " my true and lawful attorney for me and in my name, place and stead, to sell, convey and mortgage," etc. This was clearly a delegation of authority to act only for the person creating it. It did not empower the attorney to take the property of the person executing it and appropriate it to his own use, but it empowered him to sell, convey or mortgage it for Hobart Chetwood who executed the power. And where an agent may be appointed to act for another in the management or disposition of property in this manner, the law will not permit him under color of the authority to apply the property to his own use, or dispose of it to pay or secure his own debts. That is a breach of trust which the law will not permit or sanction. ( *Wright* v. *Cabot,* 89 N. Y., 570.)

The appellant Forster is chargeable with knowledge of the fact,

as the deed was executed in the name of Hobart Chetwood by John Chetwood his attorney, that the power had been created to perform that act by a written instrument, for it could not otherwise have been legally delegated. And having that notice he was chargeable with knowledge of the contents of the instrument itself, and that it did not permit the conveyance of this one-fifth of the property by John Chewood for the security of his own indebtedness. And being chargeable with that knowledge the deed is so far inoperative in his favor. (*Wetmore* v. *Porter*, 92 N. Y., 76.)

His right to participate in the surplus so far as it was derived from this deed was limited to two-fifths of the amount. He did upon the hearing make a further claim to the one-fifth represented by the interest of William D. Chetwood. That was founded upon the deed executed in form by him to the appellant Forster, but this deed was never delivered to Forster nor to any person for him, or who was authorized to deliver it to him. It was sent by the grantor in it to John Chetwood and remained in his possession to the time of the hearing before the referee. And no authority was conferred upon him or directions given to him at any time either to hold the deed for the benefit of Forster, or to hand it over to him, but so far as the evidence extended the deed seems to have gone into the possession of John Chetwood, to be affected by other and subsequent directions which might be given to him by the grantor. And as no directions whatever were made directing the delivery to Forster, this deed never became effectual in his favor, but the title to this one-fifth still remained in William D. Chetwood, who in legal form claimed one-fifth of the proceeds of the sale, while the hearing was in progress before the referee.

In answer to the claim of the appellant Forster to participate in the distribution of these moneys, it was proved that after the execution and delivery of the deed of the two-fifths to him, he assumed the control and possession of the entire property; and that he, and the executor for whose benefit he held the security, collected and received rents to the amount of $20,488.75. It was also proved that four-fifths of the rent, amounting to the sum of $1,770.38, were in like manner received for the months of December, 1882, and January and February, 1883, and from the first of March to the first of June there was in the same manner received

three-fifths of the rent. This rent was collected both by the appellant Forster and the executor Hare, for the benefit of the estate for which the incumbrance was created; and it was so collected and received by virtue of the authority derived by Forster under the deed of John and Bradbury Chetwood. This was the source and extent of the right upon which Forster and the executor were authorized to act, and in acting in this manner they were supported only by the title of the two tenants in common of the deed creating the incumbrance. In collecting these rents they acted as the tenants in common themselves, and had no other right nor interest in the rents than the owners of the two-fifths by whom the incumbrance was created. They were accordingly liable to account for the one-fifth of the rents collected after the first of March in the year 1883, and two-fifths of the rents collected in December, 1882, and January and February, 1883, and for three-fifths during the period while the rents were wholly collected and received either by Forster or, under his authority, by Hare, the executor. These were rents they had no legal right to withhold from the other tenants in common who were entitled to them. And such tenants were entitled to a lien for their proportionate part of the rents upon the two shares incumbered by the deed executed and delivered to Forster. For the law seems to be settled where one tenant in common collects and appropriates the rent belonging to his co-tenant, that the latter shall have a lien upon the interest or share of the person collecting and appropriating it for his or her reimbursement. This was considered to be the law in *Hannan* v. *Osborn* (4 Paige, 336); and *Scott* v. *Guernsey* (60 Barb., 163, 180; affirmed, 48 N. Y., 106–124).

The simple fact that Forster was not seized with the legal title to these shares will not exclude the application of this equitable principle as long as he was in possession, and himself and the executors received and appropriated the rents under the title and authority of the two co-tenants who executed and delivered the deed to him. He obtained the rents by force of their title, and should be subjected to the same measure of responsibility as though they themselves had in fact received these rents. He acted for and as these two tenants in what he did, and must be considered equally as accountable.

The amount of rents collected and without right appropriated in

this manner, under this incumbrance, largely exceeded the two shares claimed by Forster in the surplus moneys. And charging him with a corresponding amount of the rents he was not entitled to retain under his deed, in favor of the other tenants in common, extinguished his claim and entitled such tenants to the distribution of the two shares of the surplus moneys he would have otherwise been entitled to receive.

It has been objected that the referee was not authorized under the authorities to make this equitable adjustment of the claims made to the surplus money. But the reference provided for in this class of cases is to afford an opportunity to the parties to litigate and dispose of their contesting claims asserted by way of liens upon the fund. And the referee has full power and authority to hear all the evidence which may be offered affecting the adjustment of their controversy. He may receive proof that an asserted lien for any cause is without foundation. Or that it has been over-stated in amount, or otherwise satisfied and discharged, either by payment or the dealings of the parties, or that the claimant has placed himself in a position where the law will not permit him to participate in the surplus. In fact the authority the referee is entitled to exercise for the hearing and disposition of the claims, is as extensive as the claims themselves, and the legal and equitable objections that may be made to their allowance. This measure of authority seems to be within the decision of *Bergen* v. *Carman* (79 N. Y., 146) and *Fliess* v. *Buckley* (90 id., 286), which very much enlarged the rule as it was supposed to exist when *Union Dime Savings Institution* v. *Osley* (4 Hun, 657) was decided. The referee did not transcend this authority in the hearing which took place before him, but he acted entirely within its limits.

It was proposed before the referee to go into the accounts of John Chetwood against William D. Chetwood, and the other tenants in common, and evidence was given that they were indebted to John Chetwood, but it was not proved, neither was it proposed to prove, that John Chetwood had acquired any right from the other tenants in common to collect and appropriate to his own use their shares of the rents and profits of the common property; or that his accounts were in any manner charged as liens upon the shares of the other common tenants. Neither did the deed which was

executed by Bradberry C., and John Chetwood to Forster convey or transfer any interest in these demands to the grantee. All that it attempted to convey was the undivided three-fifths of the grantees named in it, in this and other property held in common. And as the deed was without authority as to Hobart Chetwood it conveyed in fact but two-fifths, and the rents, issues and profits in those two-fifths afterwards accruing from the property. Evidence as to the state of the accounts, therefore, between John Chetwood and the other tenants in common would have been unimportant for the disposition of the conflicting claims. So far as the appellant Forster, and the executor and the other appellants interested in the Verplanck estate were concerned, they had no right whatever to the property or to its rents until the deed was executed and delivered to Forster. It was under that deed that the shares' in the surplus were claimed for the benefit of the Verplanck estate. Antecedent to that, neither Forster nor the executor, nor either of the persons claiming under the deed, had any right or interest or incumbrance upon any part of this property. And as the grantee in the deed and the executor of the estate had received by the way of rents belonging to the other tenants in common a larger amount than two-fifths of the surplus, those two-fifths were rightly apportioned between these tenants. Whether that apportionment was itself strictly accurate does not require to be considered, for neither of the persons entitled to claim any inaccuracy in its distribution appeal from the order confirming the report of the referee.

It has been urged, as all the claims were not filed with the county clerk, that they should not have been received or considered by the referee. But that is an objection taken rather to the form than the substance of the proceeding, and so it was considered by the referee who allowed the claims to be made and stated so far as that was necessary while the hearing was pending before him. Neither party was in any respect misled by the course which the referee permitted to be followed, and while it may have been irregular, it affected no substantial rights whatever of the appellants. They were, while the hearing progressed, fully apprised of the claims made for the division of this surplus, and all the evidence was taken which was offered and was appropriate to that object. And as the referee directed the distribution of the surplus, as it was legal and

equitable that should be done, his report cannot be set aside or disregarded, or the order confirming it vacated simply on account of this intervening irregularity.

It was further proved upon the hearing before the referee that all the tenants in common in this property executed and delivered a deed to Christian Meyer, in form conveying their respective interests in the property to him. This deed was made after the mortgage, upon the foreclosure of which the property was sold, and probably in the early part of the year 1871. Meyer executed and delivered a defeasance or declaration that the deed had been delivered to secure the delivery of certain corporate shares and bonds specified in the instrument, and the payment to John Chetwood of any sum he had advanced to either of the other tenants in common beyond the value of personal securities held by him belonging to them. Upon these conditions being performed, then Meyer agreed to convey an undivided fifth to each of the five tenants in common. The conditions of this defeasance were only in part performed, and the deed consequently, as no reconveyance was made, still remained as a charge or incumbrance on these interests to the extent of the security created. The deed was never recorded and neither the grantee Meyer, nor Lieman & Co., to whom the corporate shares and bonds were to be returned were parties to the foreclosure upon which the sale of the property was made. As the deed was not recorded the title of Meyer under it was extinguished by the foreclosure and sale, for that is the effect as to an unrecorded incumbrance which the filing of the notice of the pendency of the foreclosure suit under section 1631 of the Code of Civil Procedure is declared to have by section 1671 of this Code. In this particular the provision is the same as that contained in the preceding Code, and it is declared that "a person whose conveyance or incumbrance is subsequently executed or subsequently recorded, is bound by all proceedings taken in the action after the filing of the notice to the same extent as if he was a party to the action." And by the sale of the premises under the judgment in the foreclosure, which was made for an actual consideration in money advanced by the purchaser, the lien of this deed to Meyer was completely extinguished. (2 R. S. [6th ed], 1138, § 1.)

The lien of Meyer, or of Lieman & Co. under the deed to him

upon this property, was extinguished by the foreclosure and sale of the preceding mortgage inasmuch as that deed was not recorded. And their claim or interest in the property has been necessarily transferred to this surplus. All the facts concerning this security were made to appear upon the hearing before the referee. And before any disposition was made of the surplus, notice of the proceeding should have been given to Meyer, and as he was out of the country, also to Lieman & Co., who were entitled to a large extent to the benefit of the security created by the deed. The rule of the court providing for these proceedings requires that this course should have been adopted when it was made to appear that Meyer and Lieman & Co. had acquired these rights. For rule 64 has directed that "notice of the hearing shall be given to any person having or appearing to have an unsatisfied lien on the moneys in such manner as the court shall direct." And that this was not intended to be restricted to liens appearing by the records is evident from the further requirement contained in the rule that the party "moving for the reference shall show by affidavit what unsatisfied liens appear by such official searches, and whether any and what other unsatisfied liens were known to him to exist."

It is possible that neither Meyer nor Lieman & Co. may have any claim to this surplus under this deed and defeasance. If they do not then the disposition which has already been directed to be made of the surplus will remain undisturbed, for as to all parties except Meyer and Lieman & Co., the decision of the referee was right. But if they shall appear upon being summoned to do so, and establish a prior right as they may, to this entire surplus, then the disposition which has already been ordered will be superseded and annulled.

The order which has been made should be reversed, and an order entered remitting the case to the referee for further proceedings upon timely notice to Meyer and Lieman & Co., securing to them an opportunity to be heard concerning the disposition of this fund. And the costs and disbursements of this appeal should for the present await the result of this further hearing.

Davis, P. J., and Brady, J., concurred.

Order reversed, and order entered remitting the case to the referee for further hearing, costs to await the result of the further hearing.