GEORGE W. BERGEN, JENNIE E. SNEDEKER et al., Respondents, v. COLES CARMAN, Appellant.

Where an order of General Term, reversing an order of Special Term, as to the disposition of surplus moneys in a foreclosure suit, and sending the case back to the referee, imposes costs absolutely, in this respect it is a final decision, and an appeal to this court can be taken.

*It seems,* that in the absence of such a provision as to costs the order is not appealable.

Upon a reference as to surplus moneys in such an action, the referee has authority to inquire as to the validity of conveyances or liens; and conveyances, as well as liens, may be attacked as fraudulent.

*King* v. *West* (10 How. Pr., 333), questioned.

Where a debtor has made a fraudulent conveyance of his real estate, a subsequent judgment creditor may proceed to sell under his execution, and

the purchaser has the right to impeach the conveyance upon such a reference; he is not bound to bring ejectment, or an action to set aside the conveyance.

(Argued November 11, 1879; decided December 9, 1879.)

Appeal from order of the General Term of the Supreme Court, in the first judicial department, reversing an order of Special Term, awarding surplus moneys in a foreclosure suit.

The referee to whom the matter was referred found, substantially, the following facts: That prior to November 3, 1874, the defendant, Seaman N. Snedeker, the mortgagor, was the owner of the mortgaged premises. By a conveyance, dated on that day, executed by himself and Jennie E. Snedeker, his wife, for the expressed consideration of $600, said premises were conveyed to James H. Campbell, subject to the mortgage herein, but without payment thereof being assumed by the grantee; said conveyance also contained a covenant that there were no other liens or incumbrances upon said premises than said mortgage. The value of said premises at the time of this conveyance was $10,000. That said James H. Campbell, by a conveyance dated June 8, 1875, conveyed the premises to the defendant, Jennie E. Snedeker, for the expressed consideration of $700, subject to said mortgage, payment of which was not assumed by the grantee. This conveyance also contained a covenant that there were no other liens or incumbrances on said premises. About the time of these conveyances, two other pieces of property were conveyed by the defendant Snedeker and wife to said Campbell, for the nominal consideration of ten dollars, which Campbell subsequently conveyed to Snedeker's daughter, without any consideration being paid him therefor. No part of the $600 expressed as the consideration in the deed from Snedeker and wife to Campbell was ever paid. For the purpose of going through the form of a payment, Snedeker handed Campbell some money, and his own check for an amount sufficient with the money to make the amount of the expressed consideration, and Campbell passed the money and check back to Snedeker. No consideration was paid to Campbell for the con-

veyance from him to the defendant, Jennie E. Snedeker. After the conveyance from Snedeker and wife to Campbell, Snedeker remained in possession of the premises and continued to occupy them until after the sale herein. At the date of the conveyance from Snedeker and wife to Campbell, Snedeker was largely in debt. About the time this conveyance was acknowledged his creditors were suing him, and within two months he made a general assignment of his property for their benefit. The referee found that the conveyances from Snedeker and wife to Campbell, and from Campbell to Jennie E. Snedeker, were made for the purpose of putting the property of Snedeker where it could not be reached by his creditors, and were in fraud of their rights.

By a mortgage dated May 1, 1877, Snedeker and his wife mortgaged the premises in question to John H. Clayton, to secure the payment of the sum of $800. Prior to the making of said mortgage, Clayton had been retained as counsel to defend the title of said Jennie E. Snedeker to the said premises, in certain actions which had been commenced in behalf of various judgment creditors of Snedeker, for the purpose of having the conveyance from himself and wife to Campbell, and from Campbell to her set aside, on the ground of fraud; and this mortgage was given in payment of the services of Clayton, rendered and to be rendered as such counsel, and was taken by him with full knowledge of the alleged fraud.

In July, 1875, three judgments were obtained against Snedeker. Executions were issued to the sheriff on each of said judgments. On the 4th day of December, 1875, the sheriff, by virtue of said executions, sold all the right, title and interest, of which the defendant Snedeker was seized or possessed, on the 6th day of July, 1875, or at any time afterwards of, in and to the premises to the claimant Coles Carman, and gave him a certificate of sale. Fifteen months, after such sale, and the giving the certificate thereof and due filing thereof having expired, without any redemption of the premises having been made, said sheriff executed and delivered to Carman a conveyance of interest of the Snedeker.

The referee found, as matter of law, that the conveyance from Snedeker to Campbell and from Campbell to Mrs. Snedeker were void as against the creditors of Snedeker, as was also the mortgage to Clayton ; that the conveyance from the sheriff to Carman passed to him the fee subject to the mortgage foreclosed, and to the inchoate rights of dower of Mrs. Snedeker ; that the latter was entitled to have one-third of the surplus retained in the hands of the county treasurer until her said right became consummate or extinct ; and that Carman was entitled to the residue of the surplus and the interest accruing on that part retained, until said dower might become consummate or extinct, and the principal when it became extinct. This report was confirmed by the Special Term and order entered accordingly. The order of General Term reversed the order of Special Term and sent the matter back to the referee ; it imposed costs absolutely upon the respondent. The reversal was upon the ground that Carman got no title by the sheriff's deed.

*A. N. Weller,* for appellant. Where a debtor has made a fraudulent conveyance of his real estate, a subsequent judgment creditor may proceed to sell under his execution, and the purchaser may impeach the conveyance in a suit at law to recover the premises. (*Chautauqua Co. Bk.* v. *Risley,* 19 N. Y., 369; *Erickson* v. *Quinn,* 15 Abb. [N. S.], 168; *Lamont* v. *Cheshire,* 65 N. Y., 30; 14 J. R., 493.) The fraudulent transfer of the property could be ascertained and adjudged in a reference to get surplus moneys. (2 R. S., 192, § 89; Story's Eq., § 64 *k ;* Willard's Eq., 48; 60 Barb., 178; *Mut. Ins. Co.* v. *Bowen,* 47 id., 618; *Schafer* v. *Reilly,* 50 N. Y., 61; *Halstead* v. *Halstead,* 55 id., 442.)

*John H. Clayton,* for respondents. The referee had no power to inquire into the validity or invalidity of the deeds from Snedeker to Campbell, and from Campbell to Mrs. Snedeker, and the mortgage from Mrs. Snedeker and her husband to Clayton. (Rule 77 [now 68], Supreme Court;

*King* v. *West*, 10 How., 333; *Huested* v. *Dakin*, 17 Abb., 141; *Union Dime Svgs. Instn.* v. *Olsey*, 4 Hun, 657; *Bradley* v. *Aldrich*, 40 N. Y., 509; 1 N. Y. Monthly Law Bulletin, 50, ¶ 104.) If the referee had had power to try a creditor's bill in a proper case, the validity of these conveyances could not in these proceedings have been inquired into. (*Crippen* v. *Hudson*, 3 Kern., 164; *Sturges* v. *Vanderbilt*, 73 N. Y., 391–392; *Coe* v. *Whitbeck*, 11 Paige, 42; *Genesee R. Nat. Bank* v. *Mead*, 18 Hun, 306.) Carman's ownership in the premises and surplus is subject to Clayton's mortgage. (*Moselly* v. *Moselly*, 15 N. Y., 334; *Jackson* v. *Garnsay*, 16 J. R., 189; Bump on Fraud. Conv., 442, 443.) He is not a creditor, but simply a purchaser with a title liable to be defeated or protected under the recording act, as he shall record, or neglect to record, his deed. (*Weaver* v. *Togood*, 1 Barb., 238; *Kleinholz* v. *Phelps*, 6 Hun, 568; *Russell* v. *Allen*, 10 Paige, 254; *Forsyth* v. *Clark*, 3 Wend., 637; *Hill* v. *Bixby*, 63 Barb., 200; 2 R. S. [3d ed.], 1137, § 1; *Hetzel* v. *Barber*, 69 N. Y., 1; 3 Abb. Dig. [new ed.], ¶ 132; *Hope F. Ins. Co.* v. *Cambrelling*, 1 Hun, 493; *Barto* v. *Tomp. Nat. Bank*, 15 Hun, 11; *Reynolds* v. *Darling*, 42 Barb., 418.) The only remedy of a purchaser under a sheriff's deed, to get possession or perfect his title to the premises, is an action of ejectment, a common law and jury action. (*Bockes* v. *Lansing*, 74 N. Y., 437; *Rogers* v. *Sinsheimer*, 50 id., 649; *Erickson* v. *Quinn*, 15 Abb. [N. S.], 168; *Chautauqua Co. Bk.* v. *Risley*, 19 N. Y., 370; *Cagger* v. *Lansing*, 64 id., 428.)

*Per Curiam.* The order of the General Term reversed the order confirming the report of the referee and directed that the case be referred to the referee to report as to priority of liens.

This is not a final order, and inasmuch as, upon the report of the referee as to this priority of the liens, the court at Special Term may hold that the moneys be retained to await the determination of a suit to be brought to test the right

of the parties to the moneys, we think the order is not appealable to this court.

The appeal must, therefore, be dismissed, with costs.

All concur.

A subsequent motion was made for re-argument, resulting as follows :

MILLER, J. In granting the order dismissing the appeal in this case, the court overlooked the fact that the order appealed from imposed costs of the appeal upon the appellant (the respondent there) absolutely and not conditionally, and in this respect was a final determination from which an appeal could lawfully be taken. The motion for a re-argument must, therefore, be granted, and the order dismissing the appeal vacated. In this aspect of the case, the questions presented for review upon the appeal are open for consideration.

We think that the referee, by virtue of the order to ascertain and report the liens and their priorities in reference to the surplus moneys, had authority to inquire as to the validity of the conveyances under which Mrs. Snedeker claimed, and of the mortgage of herself and husband to Clayton. The object of the reference was to ascertain to whom the surplus moneys belonged ; and this opens a door to an inquiry as to the character of all liens which may be presented. No reason exists why the fraudulent character of conveyances cannot be tested in these proceedings, as well as that of all other liens. One of the objects and purposes of a foreclosure suit is the distribution of the fund arising upon a sale. (*Livingston* v. *Mildrum*, 19 N. Y., 441, 442; *Beekman* v. *Gibbs*, 8 Paige, 511, 512.) In the case first cited it was held that the rights and equities of the defendants, who were lienors or claimants of the equity of redemption, are as much before the court, and as much the objects of its care, as those of the owner of the mortgage primarily to be foreclosed. Why then should not the court have power to ascertain when liens are fraudulent ? Where jurisdiction of a

court of equity is once acquired, such court, as a general rule, has the right to proceed and do justice between all the parties.

The power of the court to settle questions of this character is also, we think, fully sustained by the decisions. In *Halstead* v. *Halstead* (55 N. Y., 442), in an action for a partition of lands, it was held that on a reference as to title, a party could attack a mortgage held by another party, on the ground that it was fraudulent and void as against creditors. It was said in the opinion by ANDREWS, J., that the inquiry as to the existence and amount of the lien involved the further question as to its validity; and the court having taken possession of the fund for distribution, directs proofs to be taken as to liens and adjudges the distribution. (See also, *Schafer* v. *Reilly*, 50 N. Y., 61; *Mut. L. Ins. Co.* v. *Bowen*, 47 Barb., 618.) These cases fully sustain the principle that where a reference is ordered as to surplus moneys, that a lien may be attacked on the ground of fraud; and it matters not, we think, whether the action be a partition or a foreclosure suit. In fact, this is a most convenient practice in the disposition of claims in such cases, without the tedious process and the expense of a distinct and separate action for that purpose. The cases cited to sustain a different rule are not, we think, of sufficient weight to require special consideration. *King* v. *West* (10 How., 333), was a Special Term decision; and in whatever light the other cases relied upon by the respondent may be regarded, they are overruled by the decisions of this court already considered.

The claim that the Clayton mortgage must be sustained, even although the other conveyances are declared fraudulent and void, is not well founded. Clayton had full knowledge of the alleged fraud; knew that a suit had been brought to set aside the deeds on account of the fraud; and, in fact, the mortgage was given to him to secure the payment of his charges for defending the title of Mrs. Snedeker. It is also an answer to this position that the sheriff's certificate of the sale to Carman had been filed and recorded in the county

clerk's office, long prior to the mortgage ; and he had notice not only that the mortgagor's title was fraudulent, but also of the appellant's claim to the property by virtue of the sheriff's sale : (2 R. S., 370, § 43.)

As to the right of Carman to sell and acquire a title under his judgment, it is well settled that where a debtor has made a fraudulent conveyance of his real estate, a subsequent judgment creditor may proceed to sell under his execution, and the purchaser will have the right to impeach the conveyance, in an action at law to recover the premises : (*Chautauqua Co. Bank* v. *Risley* 19 N. Y., 369–375.)   He may, but he is not bound to file a creditor's bill to set aside the conveyance : (See also *Erickson* v. *Quinn*, 15 Abb. [N. S.], 168.

The case of *Lamont* v. *Cheshire* (65 N. Y., 30), is not in conflict with the position stated.   The same remark is applicable to *Bockes* v. *Lansing* (74 N. Y., 437).   Carman was not, therefore, bound to bring ejectment, or an action to set aside the conveyances, and had a right, we think, to contest the validity of the deeds and mortgages upon the reference.

We have carefully considered all the questions presented and the suggestions made by the respondent's counsel and are of the opinion that the referee was right, and that the General Term erred in reversing the decision of the Special Term.

The order of the General Term must, therefore, be reversed and that of the Special Term affirmed, with costs of both parties upon the appeal, to be paid out of the fund.

All concur.

Ordered accordingly.