JOEL G. JACKSON and Wife vs. EMILY R. HOLBROOK.

April 28, 1887.

**Fraudulent Conveyance—Successive Judgment Liens—Enforcement.**
Where several judgments are recovered against a debtor who has made a prior fraudulent conveyance of real estate, which is void as to them, such judgments are valid liens, at law, and may be enforced in the order of their recovery.

**Same—Remedy at Law.**—The judgment creditors may rest exclusively upon their legal remedies, without invoking the aid of a court of equity.

*Same* — Priority as between Judgment Creditors. — As between such creditors, the holder of a junior judgment acquires no preference by proceedings to enforce the same, to which the senior creditors are not parties; and the purchaser at an execution sale upon the junior judgment takes subject to the lien of a senior judgment.

*Same* — *Limitation of Action at Law.* — A cause of action at law, to test the validity of his title by an execution purchaser, is not necessarily barred because the judgment creditor has lost his equitable remedy to set aside the fraudulent conveyance, in consequence of lapse of time.

Plaintiffs brought this action in the district court for Hennepin county for breach of the covenants against incumbrances in two warranty deeds from defendant to plaintiffs, by the first of which, bearing date September 14, 1881, she conveyed to plaintiffs the east half, and by the second of which, bearing date April 1, 1882, she conveyed to them the west half, of lots 1 and 2, in block 31, in Jackson, Daniels & Whitney's addition to Minneapolis. The facts alleged and admitted or proved were as follows:

On November 21, 1873, one R. J. Mendenhall, being owner of the premises, conveyed them to one Crump, the deed being recorded December 8, 1873. Afterwards Mendenhall procured from Crump a power of attorney to sell and convey the property, and, on October 28, 1874, conveyed it, as such attorney, to Henry T. Welles and Thomas Lowry. (The complaint alleges, and the answer denies, that Mendenhall, when he conveyed to Crump, was insolvent; that the conveyance was without consideration, and made to defraud creditors; that Mendenhall procured the power of attorney from Crump in order to control the land in his own interest; and that the conveyance to Welles and Lowry was made without consideration, and for the sole use of Mendenhall, and for the purpose of hindering and delaying his creditors.)

At the date of the conveyance to Crump there were various judgments docketed against Mendenhall, among them one in favor of Solomon Gray, docketed January 2, 1874, and another in favor of Van Valkenburg & Co., docketed January 21, 1874. In August, 1876, execution issued on the latter judgment, under which, on September 28, 1876, the lots were sold to one Byron M. Smith, whose certificate

was recorded January 27, 1879. No redemption was made from this sale, and on August 27, 1881, Smith conveyed all his right, title, and interest to E. M. Wilson by deed recorded August 29, 1881.

After the conveyance from Mendenhall to Crump, and during the year 1875, seven judgments were recovered and docketed against Mendenhall. On February 7, 1876, these seven judgment creditors brought suit in Hennepin county against Mendenhall, Crump, Welles, and Lowry, to have the deed from Mendenhall and that from Crump set aside as fraudulent as to such judgment creditors. This suit was tried, and on May 25, 1877, a decree was entered adjudging the deeds to be void as against the plaintiffs' judgments. Executions were thereupon issued on these judgments, under which, on July 14, 1877, the lots were sold to E. M. Wilson, whose certificate was recorded August 3, 1877. No redemption was made from this sale.

On June 22, 1878, Wilson conveyed the lots by quitclaim deed to the defendant, and on September 2, 1881, after his acquisition of the title acquired by Smith by his purchase at the sale under the Van Valkenburg judgment, Wilson executed and delivered to defendant a second quitclaim deed. The first of these deeds was recorded July 16, 1878, and the second September 20, 1881. On September 14, 1881, and April 1, 1882, defendant executed to plaintiffs the deeds containing the covenants in question.

After the conveyances to plaintiffs, and on October 24, 1883, execution issued on the Gray judgment, under which, on December 22, 1883, the lots were sold to one Edwin C. Whitney; and on December 22, 1884, in order to protect their title, the plaintiffs redeemed from this sale, paying $1,002.80, the amount required by law to effect a redemption, which sum, with interest from the date of payment, the plaintiffs seek to recover. (The sale under the Gray judgment, and plaintiffs' redemption, were alleged in the complaint, and put in issue by the answer.)

At the trial before *Young*, J., and a jury, the plaintiffs proved the sale under the Gray judgment, and their redemption therefrom, and also the proceedings in the suit against Mendenhall, Welles, and Lowry, in which Mendenhall's and Crump's deeds were adjudged void as to the judgment creditors who were plaintiffs in that suit, and also

the sale made July 14, 1877, to Wilson, under the executions on the judgments of such plaintiffs, and the issuance and record of the sheriff's certificate.

The plaintiffs then called Mendenhall as a witness, and asked him whether, at the time he conveyed to Crump, he owed Gray the debt on which the latter, on January 2, 1874, recovered his judgment. This was objected to as incompetent and immaterial; the objection was sustained, and plaintiffs excepted.

The plaintiffs then offered to prove by the witness that on November 21, 1873, when he conveyed to Crump, he was insolvent, and was indebted to Gray in the amount alleged in the complaint, and for which the latter recovered his judgment; and that the deeds to and from Crump were made without consideration, and for the purpose of hindering and defrauding Gray and others of Mendenhall's creditors. The evidence offered was excluded, on defendant's objection that it was incompetent, irrelevant, and immaterial, and the plaintiffs excepted.

The plaintiffs then offered to prove that Wilson's purchase at the execution sale of August 14, 1877, was made at defendant's request and for her benefit. This also was excluded, on the same objection, the plaintiffs excepting.

The plaintiffs then rested, and, on defendant's motion, the court dismissed the action, the plaintiffs excepting. They appeal from an order refusing a new trial.

*Torrance & Fletcher,* for appellants.

*Woods, Hahn & Kingman,* for respondent.

VANDERBURGH, J. Under the statutes of this state, the holder of a junior judgment lien acquires no preference over a senior judgment lien upon the same real estate, by virtue of prior proceedings to execute his judgment; and, as to all persons claiming under a judgment debtor subsequent to the lien of the senior judgment creditor, the rights of the latter are superior, and cannot be divested by any proceedings of a junior lienholder, claiming under the same debtor, to which the senior creditor is not a party. The whole policy of the statutes, in respect to the preferences of prior judgment liens against real estate, would be subverted, if a junior judgment creditor

could acquire a preference merely by virtue of superior diligence in taking proceedings to enforce his lien; nor do we understand that the law recognizes any different rule, as between judgment creditors, where the judgment debtor has made prior fraudulent conveyances which are void alike as respects both. The judgments in such cases are liens at law, and, as to real estate, necessarily take precedence according to the date of the record. *Wadsworth* v. *Schisselbauer,* 32 Minn. 84, (19 N. W. Rep. 390.)

The judgment creditor may rest exclusively upon his rights and remedies at law, without invoking the aid of a court of equity. *Tupper* v. *Thompson,* 26 Minn. 385, (4 N. W. Rep. 621;) *Campbell* v. *Jones,* 25 Minn. 155; *Kumler* v. *Ferguson,* 22 Minn. 117. The procedure in this class of cases is very clearly and satisfactorily discussed by Comstock, J., in *Chautauqua County Bank* v. *Risley,* 19 N. Y. 369, 375, who says, after considering the equitable remedy as between creditors: "But no creditor having a statutory lien by judgment can be compelled to take the equitable remedy. He may, if he prefer, stand upon his lien, and the means which the law has given him of enforcing it. If his debtor has made a prior fraudulent conveyance, he may nevertheless sell upon his execution, and the purchaser will have the right, and will take the risk, of impeaching such conveyance. If his judgment has been recovered before other creditors have instituted proceedings in equity, nothing in the course or *in the result* of those proceedings can affect his rights. A *lis pendens* filed with the bill or actual notice of the suit may, perhaps, subject all judgments afterwards recovered to any decree which shall be made, and render them subordinate to a receiver's sale." S. C. 75 Am. Dec. 347, 360, and notes; and see *White's Bank* v. *Farthing,* 101 N. Y. 344, (4 N. E. Rep. 734;) *O'Brien* v. *Browning,* 49 How. Pr. 109; *Morss* v. *Purvis,* 5 Thomp. & C. (N. Y. S. C.) 140, 141, note; *Shand* v. *Hanley,* 71 N. Y. 319, 324; *Bergen* v. *Snedeker,* 8 Abb. N. Cas. 50, 58; *Union Nat. Bank* v. *Warner,* 12 Hun, 306; *Bergen* v. *Carman,* 79 N. Y. 146, 153.

A judgment creditor seeking relief against prior fraudulent conveyances of land has the choice of three remedies. He may sell the debtor's land upon execution issued on his judgment, and leave the

purchaser to contest the validity of the defendant's title in an action of ejectment; or, *secondly*, he may bring an action in equity to remove the fraudulent obstruction to the enforcement of his lien by execution, and await the result of the action before selling the property; or, *thirdly*, he may, on the return of an execution unsatisfied, bring an action in the nature of a creditor's bill, to have the conveyance adjudged fraudulent and void as to his judgment, and the lands sold by a receiver or other officer of the court, and the proceeds applied to the satisfaction of the judgment, as in the case of equitable interests the debtor's assets are reached and applied. *Erickson* v. *Quinn,* 15 Abb. Pr. (N. S.) 166.

In the first two classes, the creditor enforces his judgment at law, and the sale upon execution must necessarily be subject to prior statutory liens. The purchaser in such cases succeeds to such title only as the debtor had, treating the debtor's fraudulent transfer as void. Freeman on Executions, § 447. As to cases falling within the second class, the object of the equitable suit is to make the legal remedy more effective. In such case, no trust is created in respect to the property, but the creditor falls back upon his legal remedy, and, instead of bringing his equitable suit before the sale, he may, if necessary, maintain it after sale in the form of an action to remove a cloud from his title. *Erickson* v. *Quinn, supra.* And where assets are applied by the court in creditors' suits, as respects real estate, the rule is, as in other cases, to prefer prior liens in the distribution. "When the law gives priority, equity will not destroy it; and especially where legal assets are created by statute, (as the judgment lien was here,) they remain so, though the creditors be obliged to go into equity for assistance. The legal priority will be protected and preserved in chancery." Kent, C. J., *Codwise* v. *Gelston,* 10 John. 507, 522; *Scouton* v. *Benders,* 3 How. Pr. 185; *Wiswall* v. *Sampson,* 14 How. 52, 67.

In some states, by statute, while all judgments are liens upon the realty of the debtor, yet the creditor who first takes proceedings to execute his judgment thereby secures the priority, *(Dunham* v. *Cox,* 10 N. J. Eq. 437, 466; Nixon, N. J. Dig. 724;) and the same rule prevails in Alabama and several other states.

In *Lyon* v. *Robbins,* 46 Ill. 276, the court treat the interest of the

judgment debtor in the land, after the fraudulent conveyance, as a mere equitable one, and deny that in such cases judgments become liens on the land in the order of their rendition. The same rule is recognized in *Bridgman* v. *McKissick*, 15 Iowa, 260, under a statute of that state. This is not, however, the general rule, nor the rule in this state, where the lien of the judgment creditor is recognized and treated as valid, and one which may be enforced at law notwithstanding the prior fraudulent conveyance.

The defendant acquired title under an execution sale of certain real estate, which she afterwards conveyed to the plaintiffs by deed of warranty, with covenants against incumbrances. Subsequently the same land was sold upon execution issued upon a judgment rendered and docketed against the same judgment debtor, and prior to the one under which the defendant acquired title, and the plaintiffs allege that they were obliged, in order to preserve the title to the premises, to redeem the same by paying the amount for which they were so sold. The judgments under which the defendant derived title were rendered in and subsequent to the month of August, 1875, and the judgments upon which the subsequent sale was made were recovered in the years 1874 and 1875, prior to the first-mentioned date. The first execution sale took place in August, 1877, and the second on the 22d day of December, 1883, and the redemption referred to was made December 22, 1884. A prior conveyance of the premises, fraudulent as to creditors, was made by the debtor in the year 1873. Prior to the first execution sale, the judgment creditors first mentioned brought an action in equity to set aside such conveyance as an obstruction to the enforcement of their liens, and a judgment was duly rendered therein, declaring such conveyance fraudulent and void, and setting it aside as to such judgment creditors, and thereupon the execution sale upon their judgments was had as above stated.

It necessarily results, from the propositions previously laid down in this opinion, that, if the prior judgments were valid liens, the rights of purchasers at the execution sale thereon were not and could not be subordinated to the rights of purchasers under the latter judgments. Neither party claims under the fraudulent grantee, but both claim in opposition thereto. As to every one except *bona fide* pur-

chasers claiming under a conveyance from the debtor made prior to their judgments, they had fully complied with all the legal requirements necessary to preserve and enforce their rights at law when the judgments were duly recorded, and a sale made within the statutory time; and they were entitled to establish the existence of their lien by evidence of the fraud in an action at law as well as in equity. *Campbell* v. *Jones, supra.* It is clear, we think, that in this case the junior creditors acquired no priority merely by virtue of their equitable action and execution sale. Whether, if the proceedings had fallen within the third class above mentioned, and the sale had been made by a receiver, and the senior creditors had not been brought in, the rule would have been otherwise, we need not determine, though it is held in *Chautauqua County Bank* v. *Risley, supra,* that it would not; and the soundness of the conclusion in that case, that a statutory lien upon real estate cannot be divested by the court in proceedings to which the holder is not a party, can hardly be questioned. *Derby* v. *Yale,* 13 Hun, 273, 278; *White's Bank* v. *Farthing,* 101 N. Y. 344, (4 N. E. Rep. 734.)

The safer practice in equity, however, in that class of cases, is for all the judgment creditors to unite in the action, or it may be brought in behalf of plaintiffs and all other creditors, or such as consent to come in and be bound by the decree. *Hammond* v. *Hudson, etc., Machine Co.,* 20 Barb. 378; 5 Wait, Pr. 644; 2 Van Sant. Eq. Pr. 134; *Scouton* v. *Benders, supra.*

In *Wiswall* v. *Sampson, supra,* it was held that, where a court of equity laid hold of the property through the appointment of a receiver, a trust was thereby created for the benefit of the creditors, to be paid in the order of their priority, and that all lienholders were obliged to come into that court, and seek their remedy there; yet that it was the duty of the court, in a suit by a junior judgment creditor, to take care that the prior liens and incumbrances should be provided for, and to adopt proper measures, by reference to a master or otherwise, to ascertain them. In that case the record of the prior liens, as well as that of the plaintiff in the suit, had been anticipated by a fraudulent conveyance, and the court held that a sale upon execution by the prior judgment creditors, pending the equity suit,

was a contempt of court, and it accordingly refused to recognize the rights acquired thereunder. It was not questioned, however, that they might have been valid liens, entitled to priority. *Chautauqua County Bank* v. *Risley, supra; Derby* v. *Yale, supra; White's Bank* v. *Farthing, supra; Rogers* v. *Ivers,* 23 Hun, 424.

Doubtless some confusion in the authorities has arisen from a failure to observe the distinction between creditors' bills proper, filed to reach equitable assets, upon which no liens exist till suit brought, and actions to set aside fraudulent conveyances of real estate, where there may be valid statutory liens, unaffected by a prior void conveyance. As before intimated, the purchaser at the first execution sale acquired only the rights of the debtor at the time of the docketing of the judgments, (assuming the debtor's conveyance to be fraudulent,) and *caveat emptor* would apply to such purchaser and his grantees, as respects the rights of prior lienholders whose judgments have been duly rendered and docketed against the same debtor. *Frost* v. *Yonkers Savings Bank,* 70 N. Y. 553, 560; *Benedict* v. *Jones,* 18 Hun, 527; *Stafford* v. *Williams,* 12 Barb. 240; Freeman on Executions, § 447; 6 Wait, Act. & Def. 746, and cases; *Barron* v. *Mullin,* 21 Minn. 374; *Johnson* v. *Robinson,* 20 Minn. 153, (189, 193;) *Butman* v. *James,* 34 Minn. 547, (27 N. W. Rep. 66.)

The case is not within the registration laws. The sale upon a junior judgment is necessarily subject to all such prior judgments as are in fact liens at law upon the land sold, and the purchaser labors under the disadvantage of uncertainty as to the existence, nature, and amount of such liens, unless particularly ascertained before the sale. The fact that a conveyance under which the title appears to be in a third person is fraudulent, and of no effect, may be established by a suit in equity, or it may be proved in an action at law by any competent evidence. *Campbell* v. *Jones* and *Tupper* v. *Thompson, supra.*

If, therefore, the purchaser under the second sale in question had brought ejectment against this defendant, being in possession claiming under the first sale, he would have been entitled to recover if he belongs to the class of creditors against whom the transfer was void, which might have been shown by evidence similar to that offered in

the trial court in this case. If the debtor or his grantee had redeemed from the first sale, then the senior judgment creditor would have been compelled to proceed against them; but, in the absence of such redemption, the rights of the debtor and his grantee were wholly divested, and they were no longer necessary parties in a suit involving the question whether defendant held the title subject to or clear of the alleged prior lien of the senior judgment. *Campbell* v. *Jones, supra.* If, then, the purchaser under the senior judgment might maintain ejectment against this defendant, it is clear that the judgment was an incumbrance which constituted a breach of defendant's covenant in her deed to the plaintiffs, and we think this action will lie. In *Chautauqua County Bank* v. *Risley, supra,* the action was held well brought by the assignee of the purchaser under an execution sale against a purchaser under a receiver's sale in a creditor's suit; and the judgments are at least *prima facie* evidence of the relation of debtor and creditor and the amount of the indebtedness, and this evidence may be supplemented by evidence *aliunde,* showing that the cause of action existed at the time of the fraudulent transfer. *Vogt* v. *Ticknor,* 48 N. H. 242, 247, and cases; *Candee* v. *Lord,* 2 N. Y. 269, 275; *Hersey* v. *Benedict,* 15 Hun, 282; *Goodnow* v. *Smith,* 97 Mass. 69.

We suppose the evidence should be substantially the same as was required under the chancery practice, upon an examination *pro interesse suo,* where a judgment creditor applies to be let in, and to share in the distribution of the assets of the debtor. *Wiswall* v. *Sampson,* 14 How. 52, 65, 66, and cases cited; *Bergen* v. *Carman,* 79 N. Y. 146, 152.

We see no objection to the evidence offered on behalf of the plaintiffs, and think its rejection was error.

A judgment duly recorded is a lien, under our statute, on real estate for ten years, and may be enforced at any time within that period, subject to the rights of *bona fide* purchasers claiming under the debtor's grantee, of which the creditor would take the risk in case of delay. In this case, if any priority was acquired under the junior judgments, it was because they were first executed, and we are unable to see how the defendant was prejudiced by the subsequent de-

lay of the senior creditors. She was bound to take notice of the fraudulent character of the judgment debtor's conveyance, as respects a certain class of creditors, and that the equity suit did not necessarily conclude creditors whose judgments against the same debtor had been previously recorded. . It is true that the lapse of six years may have cut off the right of the purchaser at the last execution sale to bring an equitable suit, but, under the decisions of this court, the alleged fraudulent conveyance "might be treated as a nullity, and the property subjected to sale upon execution, at the instance of any judgment creditor, the same as though no transfer had been made." *Tupper* v. *Thompson, supra.* He might therefore rely wholly upon his remedy at law. But a cause of action at law, in ejectment or otherwise, would not accrue until the purchase at the execution sale, and, if it be conceded that the fraudulent character of the prior conveyance would be involved, the purchaser would be entitled to at least six years in which to assert his claim. Upon this question the court in *Hager* v. *Shindler*, 29 Cal. 48, 61, say: "It is no answer to say that the plaintiff, while yet a judgment creditor, might have sued in that capacity for the purpose of reaching the land as equitable assets. Such action would have differed from this both in *gravamen* and relief." See, also, *Stewart* v. *Thompson*, 32 Cal. 260. If a party has a right to several actions, one is not necessarily barred because the others are. *Lamb* v. *Clark*, 5 Pick. 193, 198; *Ivey* v. *Owens*, 28 Ala. 641; Angell, Lim. (6th Ed.) § 72.

Order reversed.