JOHN A. BRASIE v. MINNEAPOLIS BREWING COMPANY and Others.[1]

November 21, 1902.

Nos. 13,219—(107).

Fraudulent Conveyance—Title.

> The legal title to property alleged to have been transferred with intent to hinder, delay, and defraud creditors is in the fraudulent grantee, the fraudulent character of the transfer not appearing upon its face; and the title continues in such grantee, notwithstanding a sale of the property by a creditor on execution against the grantor, until the fraud is exposed, and the transfer set aside in some judicial proceeding.

[1] Reported in 92 N. W. 340.

## Statute of Limitations.

The title of a fraudulent grantee is protected by the statute of limitations, and, unless defrauded creditors effect a cancellation thereof in some appropriate action brought within six years from the discovery of the fraud, his title becomes absolute and unassailable.

## Action by Creditor of Grantor.

The defrauded creditor may cause the property so transferred to be sold on execution against a fraudulent grantor, and then maintain ejectment to recover the possession of the same, but can recover only upon establishing that the transfer was in fact fraudulent as to him; and that question must be tried and determined in accordance with the rules of law, statutory and otherwise, applicable to litigated questions generally. If it appear either from the pleadings, or from the evidence in cases where the pleadings do not disclose the source of title, and no opportunity is presented to plead the statute, that six years elapsed from the discovery of the fraud before the commencement of the action, his right to have the transfer set aside is barred by the statute of limitations, and he cannot recover. He cannot avoid the statute by bringing an action in ejectment, instead of an action to remove a cloud from his title.

## Execution—Statute of Limitations.

In cases where the creditor levies upon and sells the property on execution, the statute of limitations commences to run from the date of sale, unless it be made to appear that the creditor did not discover the fraud until some later time.

Appeal by plaintiff from an order of the district court for Wright county, Giddings, J., denying a motion for a new trial. Affirmed.

*James C. Tarbox*, for appellant.

This is an action in ejectment, not an action for relief on the ground of fraud, and it does not come within the provisions of the six years' statute of limitations. Any deed produced as a link in defendant's chain of title may be defeated on proof of its fraudulent character. Jones v. Cohen, 82 N. C. 75, 80; Helms v. Green, 105 N. C. 251, 259; Potter v. Adams, 125 Mo. 118; Rogers v. Brown, 61 Mo. 187; Hunter v. Hunter, 50 Mo. 445; Jackson v. Holbrook, 36 Minn. 494; Stewart v. Thompson, 32 Cal. 261; Lamb v. Clark, 5 Pick. 193; Currier v. Studley, 159 Mass. 17, 25; Amaker v. New, 33 S. C. 28, 36.

*Cobb & Wheelwright,* for respondent.

The deed which is claimed to have been fraudulent is voidable, but not void, and it stands as a valid conveyance until declared void by a court of competent jurisdiction. The complaint herein fails to allege that the action was begun within six years after discovery of the fraud, and the action was properly dismissed. Jackson v. Holbrook, 36 Minn. 494; Lane v. Innes, 43 Minn. 137; Cogel v. Raph, 24 Minn. 194; 14 Am. & Eng. Enc. (2d Ed.) 312; Merrill v. Dearing, 47 Minn. 137; Stuart v. Lowry, 49 Minn. 91, 96; Freeman v. Brewster, 70 Minn. 203; Travelers Ins. Co. v. Walker, 77 Minn. 440; Duxbury v. Boice, 70 Minn. 113; McMillan v. Cheeney, 30 Minn. 519; Crowley v. C. N. Nelson Lumber Co., 66 Minn. 400; Conlan v. Grace, 36 Minn. 276; Thompson v. Easton, 31 Minn. 99.

BROWN, J.

Action to recover the possession of real estate, which was dismissed on the trial in the court below, and plaintiff appealed from an order denying a new trial.

The complaint alleges substantially the following facts: On December 3, 1888, one Austin Knights was the owner of the real estate in question, and was then indebted to plaintiff in the sum of $160. That on or about January 1, 1889, he executed and caused to be recorded a deed of the property to Michael Knights, his brother. That the deed was without consideration, and was executed and recorded for the sole purpose of placing the property beyond the reach of the creditors of Austin Knights, and to hinder, delay and defraud them. Though it was claimed on the argument that the deed was never in fact delivered, the facts stated in the complaint show a delivery, beyond any serious doubt. It is alleged that the deed was executed and recorded pursuant to a conspiracy between the two Knights, and for the purpose of hindering and defrauding creditors. Clearly, they intended the title to pass from one to the other, and the delivery of the deed is sufficiently shown.

The complaint further alleges that on May 23, 1890, in an action brought by plaintiff in the district court of Wright county against Austin Knights, plaintiff recovered a judgment for the indebted-

ness due him, which judgment was duly docketed as required by statute. Thereafter an execution was duly issued upon such judgment, and the property in question levied upon, and on April 15, 1893, sold by the sheriff; plaintiff being the purchaser at the sale. It further alleges that on May 31, 1897, Michael Knights, the alleged fraudulent grantee of Austin Knights, conveyed the property to one Carroll; that on February 11, 1899, Carroll conveyed it to defendant in this action; and it also alleges that Carroll and this defendant had notice prior to their purchase of the fraudulent character of the deed from Austin to Michael; that defendant is in possession of the property; and the prayer for relief is that such possession be awarded to plaintiff. Plaintiff does not, in his demand for relief, ask to have the alleged fraudulent conveyance set aside, or the record thereof cancelled, but simply demands judgment for the possession of the premises. This action was commenced September 25, 1899,—more than ten years after the date of the alleged fraudulent conveyance, and more than six years after the sale on execution. The complaint does not allege when plaintiff discovered the alleged fraudulent character of the conveyance from Austin to Michael.

The answer of defendant denies that the conveyance was fraudulent; alleges that it was made in good faith; that defendant was a purchaser of the property for a valuable consideration; sets up certain improvements under the occupying claimant's act; and pleads the statute of limitations.

Plaintiff, in reply, puts in issue the new matters alleged in the answer, but does not set forth any facts to obviate defendant's plea of the statute of limitations. No attempt is made to bring the case within any of the exceptions preventing the running of the statute.

At the trial the court dismissed the action, upon defendant's motion, on the ground that, upon the face of the pleadings, plaintiff's cause of action, if any he had, was barred by the statute of limitations, the same not having been commenced within six years after the discovery of the fraud complained of; and this order dismissing the action is the only error complained of by appellant. The position of appellant is that the question of the statute of limita-

tions has no application to this case. It is insisted that, though the complaint sets out all the facts,—those upon which plaintiff relies to establish his title to the property, and those upon which he relies to impeach defendants' title,—the action is one in ejectment, pure and simple, and that the question whether the conveyance from Austin to Michael Knights was fraudulent, and made for the purpose of hindering and defrauding creditors, and therefore void as to them, is merely incidental to the relief he demands, which he insists may be determined without reference to the statute of limitations.

Where property is transferred by an insolvent debtor for the purpose of placing it beyond the reach of creditors and defrauding them, the defrauded creditor has the election of one of three remedies: First, he may place his demand in judgment, levy upon the property alleged to have been fraudulently transferred, cause the same to be sold under execution, and leave the purchaser at the sale to contest the validity of the fraudulent grantee's title; second, he may bring suit against the grantor, and, upon the recovery of judgment against him, bring an action in equity to remove the alleged fraudulent conveyance as an obstruction to the enforcement of his lien, and await the result of the action before selling the property; or, third, he may, on the return of his writ of execution unsatisfied, bring an action in the nature of a creditors' bill to have the conveyance adjudged fraudulent and void as to his judgment, and have the land sold by a receiver, or other officer of the court, and the proceeds applied to the satisfaction of his claim. Jackson v. Holbrook, 36 Minn. 494, 32 N. W. 852.

Plaintiff in this action adopted the first,—proceeded to judgment on his claim, the issuance of an execution, and the sale of the property thereunder; and it is his contention at this time that the legal title to the property passed to him at such sale, entitling him to its possession. This is not strictly true; for the question whether the legal title was vested in him by the sale on execution depends upon the further question whether the conveyance alleged to have been executed to hinder and defraud creditors was so executed, in point of fact. Presumptively, the transfer was made in good faith, with honest motives, and for a valuable considera-

tion. The burden was upon plaintiff to prove to the contrary, and, manifestly, until he established that fact, and obtained a judicial determination of it, the legal title to the property remained in the alleged fraudulent grantee.

Transfers of property made for the purpose of hindering and defrauding creditors are not absolutely void. They are only voidable, at the election of the creditors defrauded. While the statutes pronounce such transfers void, the word "void," as there used, is construed by all the courts to mean voidable. 14 Am. & Eng. Enc. (2d Ed.) 280, and cases cited. They are valid between the parties, and operate to transfer the title to the grantee, subject to being impeached at the suit of creditors. Spooner v. Travelers Ins. Co., 76 Minn. 311, 79 N. W. 305; Hathaway v. Brown, 22 Minn. 214. The mere election by the creditor to treat the conveyance as fraudulent and void, by levying upon and selling the property under execution, cannot have the effect of canceling or annulling it, as a matter of law. The creditor must procure its cancellation in some judicial proceeding instituted for that purpose. As remarked in Wait, Fraud. Conv. § 60, "The seizure of property on execution in cases of this kind subjects the creditor to the peril incident to proving that the transfer was fraudulent." If the creditor fails to do so, the transfer becomes effectual as to all the world. The logical conclusion, therefore, is that prima facie the legal title to property alleged to have been transferred with intent to defraud creditors is in the fraudulent grantee, the fraudulent character of the transfer not appearing on its face; and this continues, notwithstanding a sale of the property by a creditor on execution against the fraudulent grantor, until the fraud is exposed and the transfer set aside.

Plaintiff in this action was not, therefore, strictly speaking, the holder of the legal title to the property in question, and could not recover the possession thereof, without first obtaining a judicial determination that the transfer was in fact fraudulent and void. Perhaps his contention in this respect would be sound if the invalidity or fraudulent character of the deed appeared upon its face. In that case no judicial proceedings would be necessary to cancel or set it aside. It would not constitute a cloud upon the

title, and plaintiff would be the legal owner and entitled to the possession. But in a case like that at bar, where extrinsic evidence is necessary to show the invalidity of the alleged fraudulent transfer, an action of some nature must be brought, wherein that question may be litigated in the usual way; and that, too, before the title of the fraudulent grantee becomes fully vested by operation of the statute of limitations.

But it is urged that the question may be determined in this action,—one to recover the possession of the property,—and that plaintiff is entitled to prove the fraudulent character of the conveyance, and thus defeat it. The authorities sustain the proposition that the question may be determined in an action of ejectment, but it is clear, upon principle, that it must be tried as all other issues and questions are tried, and determined and judged by the rules of law, statutory and otherwise, applicable generally to litigated questions. In this action plaintiff made the fraudulent character of the transfer, by his complaint, an affirmative issue in the action; and the burden was upon him to establish all the material allegations there set forth, to warrant a recovery in his favor. The situation with respect to the trial of this particular question would be the same, however, if the allegations of the pleadings were general, alleging title in the respective parties in general terms. In that case no opportunity would be given to plead the statute of limitations (it was pleaded in this case), and advantage could be taken thereof upon the fact appearing from the evidence offered on the trial. 13 Enc. Pl. & Pr. 187; Dreutzer v. Baker, 60 Wis. 179, 18 N. W. 776; Emery v. Keighan, 88 Ill. 482; Fairbanks v. Long, 91 Mo. 628, 4 S. W. 499.

The authorities are very uniform, wherever the question has been presented, to the effect that the title of a fraudulent grantee is protected by the statute of limitations; and if creditors do not, by proper judicial proceedings, effect the cancellation of his title within the statutory period, it becomes final and conclusive. Bump, Fraud. Conv. § 571; Porter's Lessee v. Cocke, Mart. & Y. 264; Reeves v. Dougherty, 7 Yerg. 221; Blantire v. Whitaker, 11 Humph. 313; Lockard v. Nash, 64 Ala. 385; Osborne v. Wilkes, 108 N. C. 651, 13 S. E. 285; Strutton v. Young (Ky.) 25 S. W. 109. Nor

is the fraudulent grantee precluded from invoking the statute by the fact that he is, in law, held as a trustee for the benefit of creditors; for he is so held against his will. Musselman v. Kent, 33 Ind. 452; Bobb v. Woodward, 50 Mo. 95; Sims v. Gray, 93 Iowa, 38, 61 N. W. 171. This court, in Lane v. Innes, 43 Minn. 137, 45 N. W. 4, recognized the necessity of bringing an action to cancel a fraudulent conveyance after the sale on execution; for it there said, speaking in reference to the different remedies creditors have in such cases, that a judgment creditor may bring an action to remove the obstruction caused by a fraudulent conveyance before selling the property, or "he may acquire title by execution sale, and then bring his action." Of necessity, such an action must be brought, or at least the question as to the fraudulent character of the conveyance must be determined, in some proceeding, and in accordance with the rules of law applicable to all controverted questions. So long as it remains undetermined, the legal title to the property remains in the fraudulent grantee, and becomes final and conclusive after the lapse of six years from the discovery of the fraud by creditors. The question as to the fraudulent character of the conveyance is not a mere incidental fact, but a vital and controlling issue between the contending parties.

G. S. 1894, § 5136, provides that an action for relief on the ground of fraud shall be brought within six years from the discovery of the fraud; and it has been held by this court that an action to set aside a conveyance alleged to have been executed for the purpose of defrauding creditors comes within the meaning of that statute. McMillan v. Cheeney, 30 Minn. 519, 16 N. W. 404; Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838. The complaint in the case at bar contains no allegations as to when plaintiff discovered the fraud complained of; but, presumably, it was discovered by him at the time of the levy upon the property under his execution, for he now insists that he then elected to treat the transfer as fraudulent. This being the fact, his right of action to have the conveyance set aside is barred by the lapse of six years from that time. The statute must run from the date of the sale on execution, and not, as suggested by plaintiff's counsel, from the expiration of the period of redemption. Whatever title plaintiff

acquired under his execution became vested at the time of sale, subject to being defeated by redemption. Curriden v. St. Paul & N. P. Ry. Co., 50 Minn. 454, 52 N. W. 966. So that, immediately upon the completion of the sale and the execution of the sheriff's certificate, plaintiff was in position to maintain an action of this kind, and the statute must run from that date.

Statutes of limitations, affecting, as they do, legal remedies only, are universally regarded with favor by the courts, as statutes of repose, and are construed liberally. They fix periods within which controversies and disputes with respect to rights and liabilities must be brought to an end, and beyond which courts will not lend their aid to litigants. The courts do not volunteer their enforcement when not insisted upon by the parties, nor refuse to apply them when properly invoked to do so; neither will the courts aid or facilitate parties in their attempt, by "mere strategy in judicial proceedings," or by circuitous route of action, to avoid and escape their consequences. Such statutes are applied alike to all. Yet to adopt the contentions of appellant would result in permitting him to accomplish that which he could not accomplish in any other form of action, viz., avoid the statute. Had he brought an action direct for the express purpose of procuring a decree of the court cancelling the alleged fraudulent conveyance, he could not have maintained it, because of the bar of the statute; and there is no sound logic or reason in permitting him to effect that result in this indirect manner. The cases cited in his behalf from Massachusetts, which seem to sustain him, are illogical, and were, no doubt, influenced to some extent, at least, by the old judicial prejudice against the statute of limitations.

The case of Jackson v. Holbrook, 36 Minn. 494, 32 N. W. 852, cited and relied upon by plaintiff, is not in point, except that it tends to sustain the position of the defendant. In that case it appeared that an insolvent debtor conveyed his property for the purpose of hindering and defrauding creditors, and that subsequent to the conveyances several judgments were obtained against him upon debts and obligations existing at the time of the conveyance. Some of the junior judgment creditors brought an action to set aside the conveyances as fraudulent, and were successful.

They then caused the land to be sold under executions, from which. no redemption was ever made, and they subsequently conveyed the title thus acquired to a third person. Thereafter, and within ten years from the entry of his judgment, the plaintiff in the judgment first entered caused an execution to be issued on his judgment, and the property levied upon and sold, from which the purchaser from the junior judgment creditors redeemed. He then brought that action to recover against the junior judgment creditors for breach of the covenant of quiet enjoyment contained in the deed from them to him. All the court decided in that case was that the senior judgment creditor had the right to proceed as he did,— to cause the land to be sold on execution, without first applying to equity to cancel the alleged fraudulent conveyance. No action was brought by such senior judgment creditor to cancel the conveyance, but his right to do so had not expired at the time of the redemption from his execution sale. The court stated at the close of the opinion that his right to bring such an action did not accrue until his purchase at the execution sale. The statute of limitations, as applied to this particular case, was not there involved, though the court intimates strongly that the statute bars the right to have a transfer of the kind set aside.

This court has never had occasion to pass upon the precise question involved in this action; nor have we ever held that the act of the creditor in causing property alleged to have been fraudulently transferred to be levied upon and sold on execution against the fraudulent grantor, wholly ex parte and non-judicial in its nature, operates ipso facto to cancel the alleged fraudulent conveyance, and vest the absolute title to the property in the purchaser at the sale. The farthest we have gone in that direction is to sanction and approve such proceedings; and the most that can be deduced from the decisions is that the sale in such cases places the creditor or purchaser, as the case may be, in position to attack the conveyance. The result of the decisions is that the creditor may bring an action to set aside the alleged fraudulent conveyance before sale on execution, and then make the sale, or he may make the sale,

and then bring the action. In either case he must get rid of the alleged fraudulent conveyance.

Our conclusions from these considerations are that, without regard to the form of the action, the question as to the fraudulent character of a transfer such as that here complained of must be judicially determined within the period covered by the statute of limitations, or it ripens into full title as against creditors and all others, and that, as it conclusively appears from the pleadings in this action that the plaintiff's right to have the fraudulent conveyance set aside is barred by the statute, the court below rightly dismissed the action, and the order denying a new trial is affirmed.

Order affirmed.

START, C. J. (dissenting).

I dissent for the reason that the majority opinion in effect overturns, as it seems to me, well-settled principles which have become rules of property.

This action is one at law to recover possession of real estate, and not one in equity for relief on the ground of fraud, or, in other words, it is an action of ejectment, in which the plaintiff stands upon his legal rights. It is true that the complaint unnecessarily alleges evidentiary facts which are the proof of the plaintiff's title. It appears from such allegations that on December 3, 1888, the plaintiff was a creditor of Austin Knights, who then owned the real estate which is the subject-matter of this action, and who on January 1, 1889, made a fraudulent conveyance thereof to his brother Michael, which was recorded on the same day; that on May 23, 1890, the plaintiff recovered judgment, which was duly docketed on that day, upon his debt against the fraudulent grantor; that execution was issued thereon, and the land sold thereunder to the plaintiff on April 15, 1893, and was never redeemed; and that the defendant brewing company is in possession of the land through mesne conveyances from the fraudulent grantor, but with full notice of the original fraudulent conveyance. This action was commenced September 25, 1899, and was dismissed by the trial court because the complaint did not state facts constituting

action was brought within six years after the discovery of the
a cause of action, in that it did not appear therefrom that the
fraud.

The allegations of the complaint, for the purposes of this appeal,
must be taken as true; hence the defendant is not a bona fide pur-
chaser, but stands in the shoes of the original fraudulent grantee,
and we must consider the case as if it were between the creditor.
and such grantee. It may be conceded at the outset that the
title of a fraudulent grantee is protected by the statute of limita-
tions. But if a party has two remedies, and one is barred, it by no
means follows that he may not avail himself of the other. If the
creditor avails himself of the equitable remedy which he has of
bringing an action to set aside a fraudulent conveyance, the limita-
tion is six years from the time he discovers the fraud; but, as I
understand the decisions of this court, if he pursues his other
remedy, and stands upon his legal rights,—recovers judgment, and
seizes and sells the land on execution,—and never brings any
equitable action to cancel the fraudulent conveyance, his action of
ejectment to recover possession of the land can only be barred by
fifteen years' adverse possession.

The creditor, although he seizes and sells the land on execution,
may, if he so elects, resort to equity to secure a cancellation of the
fraudulent transfer, but he is not bound to do so. He may take
his chances on being able to prove the conveyance fraudulent
whenever his title is challenged. He acquires by the execution
sale the legal title to the lands, and in an action at law by him
to recover possession thereof, or in an action against him if he
be in possession, he may, as against the fraudulent grantee and
all persons claiming under him with notice, prove that the convey-
ance to such grantee was fraudulent. He may prove such fact
precisely as he may any other fact which is a necessary link in his
chain of title, as a matter of strict legal right, without first appeal-
ing to a court of equity to set the fraudulent conveyance aside.
See Tupper v. Thompson, 26 Minn. 385, 4 N. W. 621; Furman v.
Tenny, 28 Minn. 77, 9 N. W. 172; Cumbey v. Lovett, 76 Minn. 227,
79 N. W. 99. If, however, the pleading of his adversary discloses
the source of his alleged title (that is, the fraudulent transfer), the

creditor must confess and avoid it by alleging in his answer or reply, as the case may be, the fact that the transfer was fraudulent, and prove such fact as a part of his evidence on the trial. Proving on the trial such fact, which is a necessary link in the creditor's title, must not be confounded with an action to cancel the fraudulent transfer. The conclusion that the legal title passes by the execution sale necessarily follows from the rule, which is well settled in this state, and in nearly all of the states of the Union having statutes similar to our own (G. S. 1894, § 4222), that the title of the fraudulent grantee in such cases is, as to the creditor, a nullity, and his judgment a valid lien at law upon the land attempted to be fraudulently conveyed, which may be enforced in the same manner and with precisely the same effect as if there had been no such conveyance.

It is true that a fraudulent conveyance is voidable, not void, in that it is good as between the parties to it; and, if the fraudulent grantee conveys the land to a bona fide purchaser before the creditor seizes the land on execution, it would destroy the lien of the judgment, and the title of the purchaser would be good. But as Mr. Freeman, in his work on Judgments, aptly says: "As against the fraudulent transferee, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution. The title transferred by such sale is not a mere equity,—not the right to control the legal title, and to have the fraudulent transfer vacated by some appropriate proceeding. It is the legal title itself." 2 Freeman, Judg. § 350. The effect of a fraudulent transfer of land on the rights of a creditor has never been more clearly or tersely stated than it was by Chief Justice GILFILLAN in the opinion of the court in the case of Campbell v. Jones, 25 Minn. 155. He said:

"That a judgment creditor may, notwithstanding a conveyance of his real estate by the judgment debtor, made with intent to hinder, delay, or defraud creditors, levy upon and sell the real estate, there is no question. As to the creditor, to defraud whom the conveyance is made, it is void (G. S. c. 41, § 18 [G. S. 1894, § 4222]), and is of no effect whatever in the way of passing the title. The title, for the purpose of enabling creditors to enforce their

debts against the real estate, still remains in the grantor, as though the conveyance had not been made; and it is equally clear that the creditor who has proceeded to enforce his debt against the real estate, or any one claiming through such proceedings, may show the conveyance to be void, as against such proceedings, whenever any one shall claim under such conveyance, and in opposition to the creditor's proceedings, or the title derived through them."

The last case cited was approved in Jackson v. Holbrook, 36 Minn. 494, 32 N. W. 852, in which it was directly held that the judgment of a creditor, recovered against his debtor who has made a prior fraudulent conveyance of real estate, which is void as to him, is a valid lien at law thereon, and that the creditor may rest exclusively upon his rights and remedies at law, without invoking the aid of a court of equity. This well-settled rule of this court that a creditor cannot be deprived of his legal right to enforce his judgment against the land of his debtor fraudulently conveyed prior to the entry thereof, that his judgment is a legal lien thereon, that the purchaser at the execution sale thereof acquires the legal title thereto, and that he is not bound to pursue his equitable remedy to have the fraudulent transfer set aside, is sustained by the great weight of judicial authority. The following are some of the leading cases in other states which support the rule: Chautauqua v. Risley, 19 N. Y. 369; Bergen v. Carman, 79 N. Y. 146, 153; Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082; Thomason v. Neeley, 50 Miss. 310.

It has, however, been held by several able courts that the creditor's judgment is not a legal lien on land of a debtor who has made a prior fraudulent conveyance thereof; hence the legal title thereto does not pass to the purchaser by a sale on execution, but simply an equitable title, which gives him the right to control the legal title, and have the fraudulent transfer set aside by a direct equitable action. The leading case in support of this conclusion is Doster v. Manistee, 67 Ark. 325, 55 S. W. 137. The opinion, which was by a divided court, repudiates the rule that judgments in such cases are valid liens at law, and, after quoting from the opinion in Jackson v. Holbrook, contains this statement:

"Those states which hold, under statutes similar to ours, that a judgment is a lien upon property fraudulently conveyed prior to its rendition, may very properly and consistently adopt the first of the above-named remedies, to wit, to sell the debtor's land upon execution, and leave the purchaser to contest the validity of the defendant's title in an action of ejectment,"—and then proceeds to criticise the proposition that the judgment is a lien as an egregious fallacy.

The majority of the court in this case, it seems to me, have fallen into the fundamental error of assuming as their premises that the plaintiff's judgment was not a legal lien upon the land attempted to be as to him fraudulently conveyed by his debtor, and that, as purchaser at the execution sale, he acquired only an equitable title to the land, the legal title remaining in the fraudulent grantee, which gave him the right to control the legal title by having the transfer set aside by bringing an action to be relieved from the fraud by cancelling the fraudulent transfer and vesting the legal title in him. If the premises are correct, it is plain sailing to the conclusion reached. But unless I have misconceived the decisions of this court, the premises are not correct, for, if the conveyance was fraudulent as against the creditor, the judgment was a lien, and the legal title passed to the plaintiff on the execution sale.

The cases cited in the opinion to support the proposition that the creditor must, by a proper judicial proceeding, effect a cancellation of the fraudulent transfer before he can acquire the legal title, are not, if I have read them correctly, in point. All of them, save one, were actions in equity to cancel such a transfer, or to charge the fraudulent grantee as a trustee; and it was correctly held that such actions were for relief on the ground of fraud, and must be brought within the time limited after discovering the fraud. The excepted case was an action of ejectment, and it was rightly held that the creditor's title was barred by adverse possession of the land by the fraudulent grantee. The case of McMillan v. Cheeney, 30 Minn. 519, 16 N. W. 404, cited by defendants' counsel, is clearly not in point, for that was a case where the legal title to real property was obtained by the alleged fraud of the grantee,

and the grantor had no remedy except an action for relief on account of the fraud. Such is not this case. It may be that the rule adopted by the majority of the court is wiser, more logical and just, than the old rule established by this court; but, if a change is to be made, it ought not to be by a retroactive decision which may cloud, if not unsettle, titles to real estate.